**UNITED STATES of America ex rel. William J. JOHNSON, E4204, Appellant,**

**v.**

**Angelo C. CAVELL.**

**No. 19299.**

United States Court of Appeals, Third Circuit.

Submitted May 6, 1971.

Reargued En Banc June 21, 1972.

Decided Oct. 3, 1972.

John H. Lewis, Jr., Philadelphia, Pa., for appellant; Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel.

James D. Crawford, Asst. Dist. Atty., Philadelphia, Pa., for appellee.

Submitted May 6, 1971.

Before HASTIE, Chief Judge, and KALODNER and ALDISERT, Circuit Judges.

Reargued En Banc June 21, 1972.

Before SEITZ, Chief Judge, and KALODNER, HASTIE, VAN DUSEN, ADAMS, GIBBONS, MAX ROSENN, JAMES ROSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal from the denial of a petition for habeas corpus by a prisoner of the Commonwealth of Pennsylvania. In 1954 the appellant Johnson pleaded guilty to an indictment charging him with murder. Under Pennsylvania law following such a plea a degree of guilt hearing is held. Pa.Stat.Ann. tit. 18, § 4701 (1963); Johnson is confined under a judgment of the degree of guilt hearing court finding him guilty of first degree murder. He could have challenged on appeal the sufficiency of the evidence supporting this degree of guilt determination. He did not appeal. The federal habeas corpus petition alleges that he was not advised of his right to appeal. *See* Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

Once in prison Johnson filed with the Court of Oyer and Terminer of Wyoming County a series of petitions for habeas corpus and for other relief.[1] Germane to this case is the decision in a Pennsylvania Post Conviction Hearing Act proceeding that Johnson was foreclosed by waiver from litigating his Douglas v. California claim, and that in any event the failure to advise him of his appeal rights was not prejudicial.

In 1967 after having filed nine previous habeas corpus petitions Johnson filed a petition for post conviction relief which alleged a number of constitutional infirmities in the judgment under which he was confined. His *Douglas* claim was not alleged. He was represented by counsel in the 1967 proceeding, and an appeal was taken. Thereafter, pro se, he filed a habeas corpus petition in the Wyoming County Court alleging the *Douglas* claim for the first time. This petition was dismissed without a hearing on the ground that the pendency of the appeal deprived the County Court of jurisdiction. At Johnson's request counsel was appointed and an appeal taken from the dismissal. This appeal was consolidated with the earlier post conviction appeal pending in the Supreme Court of Pennsylvania. All of Johnson's contentions in this counselled consolidated appeal were rejected except the *Douglas* claim. On that claim it reversed the

---

1. The involved procedural history of Johnson's numerous applications to the Pennsylvania Courts is set forth in Commonwealth v. Johnson, 431 Pa. 522, 246 A.2d 345 (1968).

County Court decision that it lacked jurisdiction, and remanded for a hearing. Justice Roberts wrote:

"We now turn to Johnson's second appeal which comes to us following the denial without hearing, of a petition for relief under the Post Conviction Hearing Act wherein appellant maintained that he was never told of the right to appeal or the right to free appellate counsel if indigent. . . . [A] petition under the Post Conviction Hearing Act must not be dismissed without an evidentiary hearing if it alleges facts which, if true, would entitle petitioner to relief. . . ."

\* \* \* \* \* \*

"However, even though appellant did allege facts which if proven would have entitled him to relief, the court below could still have denied Johnson an evidentiary hearing if it found that the right to litigate the issues raised in the petition had been waived under section 4 of the Post Conviction Hearing Act. Commonwealth v. Snyder, 427 Pa. 83, 233 A.2d 530 (1967). Moreover, had the court below found such a waiver by virtue of the fact that appellant's first Post Conviction Hearing Act petition failed to raise the *Douglas* issue even though Johnson had counsel and the petition long post-dated the *Douglas* decision, we would have no difficulty affirming the denial of relief." 431 Pa. 522, 531–533, 246 A.2d 345, 351–352 (1968).

To put the quoted extract from Justice Roberts' opinion in context it is necessary to refer to Section 4 of the Pennsylvania Post Conviction Hearing Act, Pa.Stat.Ann. tit. 19, § 1181 et seq. (1954), which provides:

"(b) For the purposes of this act, an issue is waived if:

(1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this act; and

(2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue.

(c) There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure."

■ Although the "presumption" subsection contains no such language it has been construed as applicable only if the defendant was represented by counsel at the time the default occurred. Commonwealth v. Linde, 432 Pa. 324, 248 A.2d 235, 236 (1968); Commonwealth v. Mumford, 430 Pa. 451, 243 A.2d 440, 442 (1968); Commonwealth v. Satchell, 430 Pa. 443, 243 A.2d 381 (1968).

The effect of the remand by the Supreme Court of Pennsylvania, then, was to direct that a hearing be held on the issue of waiver of the *Douglas* claim by failing to raise it in Johnson's first counselled Post Conviction Hearing Act petition in 1967. Upon the remand the County Court, as best we can tell from the available records, took no testimony, but heard argument in which Johnson's counsel made this offer of proof:

"First, by Mr. Johnson, that he was not advised of his Douglas, or his appellate rights by post conviction counsel at the time of his post conviction hearing. And second, by Mr. DeWitt [counsel for Johnson in the Post Conviction Hearing Act proceeding] that in arguing and in advising, I should reverse the procedure there, in advising counsel [sic] concerning his post conviction petition and arguing it before the Supreme Court, this fact was not raised. He was not advised by trial counsel of his right to appeal. This issue was not pressed by his post conviction hearing counsel."

Apparently this offer of proof was accepted by the County Court in lieu of

testimony, for immediately thereafter the Court ruled:

"We find as a fact that the defendant, the petitioner, has failed to prove the existence of extraordinary circumstances justifying his failure to take a direct appeal. The only fact he asserts to sustain his present petition to direct appeal is that counsel failed to advise him of his right to direct appeal. The defendant stands convicted of murder upon his plea of guilty thereto, and the court found the degree of guilt to be murder in the first degree, and fixed the penalty of life imprisonment. At the time that the Court found the defendant guilty and fixed this penalty, the defendant had right of direct appeal which could have raised three issues only: (1) The jurisdiction of the Court, and in this case since the Court of Oyer & Terminer of Wyoming County, tried the case, imposed the penalty, there can be no dispute on that ground; (2) Validity of the defendant's plea of guilty and this issue has already been passed upon by the Supreme Court of Pennsylvania; and (3) Validity of the sentence and since the defendant was found guilty of murder in the first degree and was sentenced to life imprisonment, this being the lesser of the two penalties imposed by the statute, the defendant's direct appeal to the Supreme Court would have been of no avail.

Our duty at this point is to determine whether or not any extraordinary circumstances have been proven before this Court or offered to be proven before this Court, in support of the present post conviction petition.

Namely, that the defendant didn't exercise his right of direct appeal because he wasn't advised by counsel of right of direct appeal, and what we now decide is that the failure of counsel to advise the defendant of the only useless rights, was not such an extraordinary circumstance as would void the charge made and leveled by the Commonwealth, that the defendant waived his right to raise this issue, by failure to assert it in an earlier post conviction petition."

This somewhat ambiguous pronouncement probably decides (1) that the *Douglas* violation was harmless since there were no grounds on which Johnson could have appealed, and alternatively (2) that by failing to assert the *Douglas* claim in his first counselled Post Conviction Hearing Act petition Johnson had waived it.

 No appeal was taken from this decision. Johnson did, however, file the federal habeas corpus petition now before us. The district court assumed that the *Douglas* claim might be meritorious. It denied relief on the ground that the questions which could have been asserted on direct appeal had been litigated in collateral proceedings and that, therefore, appellant had not been prejudiced by the loss of a direct appeal. The Commonwealth concedes that this equation of state post conviction proceedings with state direct appeal was error.[2] When the case was before a panel of this court the Commonwealth took the position that despite the erroneous basis of decision the order of the district court should be affirmed because as the County Court has held, Johnson waived his *Douglas* claim.

2. Following a plea of guilty to murder generally, appellant was adjudged guilty of murder in the first degree. He could have challenged on appeal the sufficiency of the evidence supporting the degree of guilt determination. But because sufficiency of the evidence presents a non-constitutional issue, it could not have been considered in state habeas corpus or Post Conviction Hearing Act proceedings. Therefore, none of such proceedings can be treated as a substitute for direct appeal. Commonwealth v. Musser, 437 Pa. 131, 262 A.2d 678 (1970). When the degree of guilt is found to be less than first degree, the claims available on direct appeal—validity of the plea and the lawfulness of the sentence—are also cognizable in collateral proceedings. Commonwealth v. Stokes, 426 Pa. 265, 232 A.2d 193 (1967).

The panel decision recognized that the County Court waiver determination as a proposed bar to federal habeas corpus was inconsistent with federal waiver standards. *See* Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). It directed a reversal of the judgment denying the writ and a remand for a federal hearing as to which the omission of the *Douglas* claim in the first counselled Post Conviction Hearing Act proceeding was a deliberate bypass of an available state procedure.

The appellee petitioned for rehearing by the full court. Before the court *en banc* appellee advanced several positions different from those taken when the appeal was before the original panel. It was conceded that the decision of the Wyoming County Court, if it applied Section 4(c) of the Pennsylvania Post Conviction Hearing Act in a manner inconsistent with the federal waiver standard announced in Fay v. Noia, *supra*, was wrong as a matter of Pennsylvania law. According to the appellee the proper construction of Section 4(c), approved by the Supreme Court of Pennsylvania, is that it merely places upon the petitioner the burden of pleading and of proving that his failure to raise an issue in a prior proceeding was not a knowing and understanding bypass. *See* Commonwealth v. Cornitcher, 447 Pa. 539, 291 A.2d 521, 526 (1972); Commonwealth v. Cannon, 442 Pa. 339, 275 A.2d 293 (1971); Commonwealth v. Kravitz, 441 Pa. 79, 269 A.2d 912 (1970); Commonwealth v. Satchell, 430 Pa. 443, 243 A.2d 381 (1968); Commonwealth v. Stevens, 429 Pa. 593, 240 A.2d 536 (1968). Properly interpreted, in other words, the waiver standard of Section 4 of the Pennsylvania Post Conviction Hearing Act is consistent with Fay v. Noia for while the statute uses the word presumption it actually deals only with burden of pleading and burden of proof. It was also conceded that Johnson's petition to the Wyoming County Court alleging the *Douglas* claim was sufficient to require the holding of an evidentiary hearing at which he could offer testimony in support of his claim that he had not waived that claim. The failure to hold such a hearing was error. The county court also erred, according to appellee, in holding that there were no issues which could have been appealed and that the *Douglas* violation thus was not prejudicial.

■ But instead of appealing the erroneous decision of the Wyoming County Court Johnson petitioned for federal habeas corpus relief. Technically that petition probably should have been dismissed at once because there was an available and unexhausted state court remedy of direct appeal from that decision. 28 U.S.C. § 2254(b). We are advised by appellee that even if untimely such an appeal would have been permitted *nunc pro tunc*.

Counsel for the Commonwealth proposes that in the interest of judicial economy the needless step of an appeal *nunc pro tunc* to correct the conceded error of the Wyoming County Court in dismissing Johnson's petition without an evidentiary hearing should be avoided. He suggests that the Wyoming County Court will now afford Johnson a hearing as to whether in his first counselled Post Conviction Hearing Act proceeding he had knowingly and deliberately waived his *Douglas* claim. If that court should decide the waiver issue in Johnson's favor, as now seems likely, and if in fact he was not given timely advice as to his appeal rights, the Pennsylvania courts will, we are informed, afford Johnson an appeal from the degree of guilt determination at this time.

■ It would appear, then, that there may be an available and unexhausted state remedy of direct appeal. Under the circumstances it is appropriate to withhold federal habeas corpus relief. The case will be remanded to the district court for the entry of an order affording to the Commonwealth reasonable time, to be fixed by the district court, within which to bring on for hearing before an appropriate state court Johnson's petition alleging that he was not

advised of his appeal rights and that his failure to set forth this claim in his counselled Post Conviction Hearing Act proceeding was not a knowing and deliberate bypass. The district court should, however, retain jurisdiction over the petition so that if at the expiration of the time period so fixed the Commonwealth has not afforded Johnson such a hearing, the district court can then hold a federal hearing on the waiver issue and on any other issues which after the resolution of that issue may remain for decision. *See, e. g.,* Douglas v. Green, 363 U.S. 192, 80 S.Ct. 1048, 4 L.Ed.2d 1142 (1959).

Judge Adams' concurring and dissenting opinion suggests that because this circuit has not yet decided whether notice of the right to appeal from a state court conviction is a prerequisite for the effective waiver of appeal rights recognized in Douglas v. California, *supra*,[3] the federal court somehow lacked habeas corpus jurisdiction, and should not now, as we have ordered, retain jurisdiction over the petition pending the decision by the Pennsylvania courts of the waiver issue. This is too narrow a view of the habeas corpus power. The statute confers on the district court the power to act judicially in the matter, and we have recognized a broad authority to regulate the manner in which and the time when that power shall be exercised even prior to a final hearing and decision on the merits. *See* Johnston v. Marsh, 227 F. 2d 528, 530 (3d Cir. 1955). That case recognizes our power to release a petitioner on bail pending a hearing; *a fortiori* we can leave the petitioner in state custody but retain jurisdiction when we postpone a hearing. Deference to an available state court remedy does not imply powerlessness to afford the petitioner a prompt hearing when by reason of delay the state process may prove to be ineffective to protect the rights of the prisoner. 28 U.S.C. § 2254(b);

Commonwealth ex rel. Craig v. Maroney, 348 F.2d 22, 33 (3d Cir. 1965), cert. denied, 384 U.S. 1019, 86 S.Ct. 1966, 16 L. Ed.2d 1042 (1966); In re Ernst, 294 F. 2d 556, 561 (3d Cir.), cert. denied, 368 U.S. 917, 82 S.Ct. 198, 7 L.Ed.2d 132 (1961). Slayton v. Smith, 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971) is not to the contrary, for there are exceptional circumstances here.

ADAMS, Circuit Judge (concurring and dissenting).

The labyrinthine factual situation presented by this case tends to obscure what is, in my view, a most important question of federal habeas corpus jurisdiction, the improper resolution of which might well disturb the fragile balance of federal-state relationships so essential to the proper functioning of our system of government.

It would appear the majority has assumed, I believe incorrectly, that federal habeas jurisdiction was properly invoked by petitioner, and thus, that the federal court has something to retain. Moreover, whatever jurisdiction may be thought present here, and I suggest there is none at this point, should in no event be retained when the quid pro quo is a potentially serious encroachment upon federal-state relations.

I

On the evening of April 16, 1953, petitioner, William Johnson, was arrested for what has been described as "the most horrible crime ever committed"[1] in Wyoming County, Pennsylvania—strangling to death a 94 year-old woman during an attempted robbery. Brought to the Tunkhannock Substation of the Pennsylvania State Police, Johnson was interrogated from 2:30 a. m. until 2:50 a. m. on April 17th by the sergeant in charge. Following an oral confession by Johnson, the court stenographer was called in and, from 3:20 a. m. until 4:13

---

3. *See* Gibbons, Waiver: The Quest for Functional Limitations on Habeas Corpus Jurisdiction, 2 Seton Hall L.Rev. 291, 308 (1971).

1. Transcript (unnumbered page).

a. m., recorded a stenographic question and answer statement.

After a preliminary hearing at which he was represented by two attorneys, Johnson was bound over for court and later indicted for murder. Two attorneys, one of whom had been present at the preliminary hearing, were appointed to represent Johnson at trial.

During the course of the trial before a jury, the Commonwealth introduced evidence concerning the killing, the statements given at the Tunkhannock Substation, and two additional oral statements made by Johnson on other occasions and unknown to defense counsel until that moment. After the most damaging of the statements had been introduced, defense counsel requested a recess, conferred with Johnson for fifteen to twenty minutes in an ante-room, and then returned to the court and announced, in Johnson's presence, that Johnson's plea would be changed to guilty. The trial judge discharged the jury, proceeded to find Johnson guilty of first degree murder, and sentenced him to life imprisonment. Neither Johnson nor his counsel made even the slightest indication to the trial judge regarding an appeal, and subsequent to the trial, neither filed a direct appeal to the Supreme Court of Pennsylvania.

Between 1954 and 1965, Johnson filed nine petitions for state habeas corpus relief.[2] Each was denied without hearing. In 1967, Johnson, with the aid of counsel, filed a petition under the Pennsylvania Post Conviction Hearing Act[3] alleging that his guilty plea was not knowingly and intelligently entered and that the confessions introduced at his state trial were involuntary. After a full evidentiary hearing, the Wyoming County Court denied relief and Johnson appealed to the Pennsylvania Supreme Court.

While the appeal in the Pennsylvania Supreme Court was pending, Johnson filed, in the Wyoming County Court, four *pro se* petitions under the PCHA alleging, *for the first time,* that he had been denied the right of direct appeal from the judgment of sentence entered at his state criminal trial. He also alleged, *for the first time,* that he had never been advised by trial counsel or by the sentencing court, nor did he himself independently know at the time of conviction, that he had the right to appeal and the right to counsel on appeal. Holding that the pendency of Johnson's appeal in the Pennsylvania Supreme Court deprived it of jurisdiction as to these four later petitions, the Wyoming County Court dismissed without a hearing. At Johnson's request, the court appointed counsel for him, and counsel perfected an appeal from the judgment dismissing the four *pro se* petitions.

The Pennsylvania Supreme Court consolidated the two appeals and then rejected all but the claim that Johnson had been denied the right to appeal from the judgment of sentence and had never been advised, nor independently aware, of his right to appeal, and the right to the assistance of counsel on appeal.[4] On the right-to-appeal issue, the Supreme Court ruled that Johnson had alleged facts which, if true, would entitle him to appeal from the judgment of sentence and that, therefore, on this issue, Johnson was entitled to a full evidentiary hearing. The Supreme Court also noted, however, that under section 4 of the

---

2. During this same time span, petitioner filed in the federal district court a petition for a writ of habeas corpus that was denied.

3. 19 P.S. § 1180–1 et seq. (Supp.1970). (Hereinafter cited as PCHA).

4. Commonwealth v. Johnson, 431 Pa. 522, 246 A.2d 345 (1968). For the sake of brevity, petitioner's claims that he was denied the right to appeal and that he had never been advised nor independently aware of his right to appeal with the assistance of counsel will be referred to simply as "the right-to-appeal" issue throughout this opinion. Calling this hotchpot of claims, *"Douglas"* rights, as did the Pennsylvania Supreme Court, only shrouds the issue by assuming that petitioner's claims are of constitutional dimension. *See* Part III, *infra.*

Pennsylvania Post Conviction Hearing Act the lower court on remand may deny an evidentiary hearing on the question whether Johnson had been denied the right to direct appeal and had not been advised, nor aware, of his appellate rights, if it finds that Johnson, by failing to raise the right-to-appeal claim in his first counselled PCHA petition, had waived his state-conferred, statutory right to litigate the question concerning his right to appeal from the judgment of sentence.[5] The Supreme Court then remanded the case to the Wyoming County Court for a determination of the issue whether Johnson had waived the right to litigate his right-to-appeal contention.[6]

On remand, the Wyoming County Court heard argument in which Johnson's attorney offered to prove that Johnson had not been advised by counsel at the time of his prior post-conviction petition, nor was Johnson independently aware, of the right to appeal with the assistance of counsel from the judgment of sentence. The Wyoming County Court then apparently held that the failure of post-conviction counsel to advise Johnson when he filed his first counselled PCHA petition of his right to appeal from the judgment of sentence, even assuming Johnson had no independent knowledge of such right, did not, under the PCHA, constitute such "extraordinary circumstances"[7] as to excuse Johnson's failure to raise the right-to-appeal claim in his first, counselled post-conviction petition. In addition, the Wyoming County Court ruled, as a matter of state law, that the right to appeal from the judgment of sentence was "meaningless" here, since any issue Johnson could have raised on such direct appeal, he had the opportunity to raise collaterally under the Pennsylvania Post Conviction Hearing Act.

Johnson could have appealed to the Pennsylvania Supreme Court the Wyoming County Court judgment holding that he had, because of the absence of "extraordinary circumstances," waived the right to litigate the right-to-appeal issue and that the right to appeal was "meaningless" in this case. Rather, he sought collateral relief, this time by filing the present habeas petition in the federal district court. In this petition, Johnson urged all three of his principal contentions: (1) that his confession was involuntary; (2) that his guilty plea was not entered intelligently and with understanding; and (3) that he had been denied, and had never been advised of, the right to appeal, with the assistance of counsel, from the judgment of sentence.

Without conducting a hearing, the district court found that the Wyoming County Court had given petitioner a complete and fair opportunity to present his claims, adopted the Wyoming County Court's findings of fact,[8] and examined the merits of Johnson's contentions. After rejecting the confession and guilty plea claims, the district court focused

---

5. 431 Pa. at 533, 246 A.2d at 352. Section 4 Post Conviction Hearing Act, 19 P.S. § 1180–4 (Supp.1970) (emphasis supplied) provides in relevant part:
 "(b) For the purposes of this act, an issue is waived if:
 (1) the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this act; and
 (2) the petitioner is unable to prove the existence of *extraordinary circumstances* to justify his failure to raise the issue."

6. 431 Pa. at 533, 246 A.2d at 352.

7. *See* fn. 5 *supra*.

8. *See* Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In *Townsend*, the Supreme Court indicated that a district judge sitting in habeas may, where the state court has reliably found the facts, defer to the state court's factual findings, although he must independently apply the applicable federal law. This rule has now been codified. 28 U.S.C.A. § 2254(d) (1971).

upon the right-to-appeal issue and held that, even assuming merit to the claim, any deprivation of the right to appeal was "nonprejudicial" in Johnson's case, since anything he could have raised on direct appeal from the judgment of sentence, he had already in fact litigated collaterally.

With Johnson's case coming to this Court in this posture, the majority asserts that because there may be a presently available and unexhausted state remedy of direct appeal, the proper action is to remand the case to the district court for an order affording the Commonwealth reasonable time to bring on for hearing before a state court Johnson's right-to-appeal claim. The majority also holds that the district court should retain jurisdiction over the case so that, in the event the state courts fail to entertain Johnson's claims, a federal hearing can be held.

To the extent the majority remits petitioner to pursue his available state remedies, I concur. I dissent, however, from the majority's view that retention of jurisdiction by the district court is proper in this case. Instead, Johnson's federal habeas petition should be dismissed without prejudice to the filing of another petition, if such petition be appropriate, after he has exhausted available state remedies.

I recognize that there is only a seemingly narrow difference between the majority's disposition and the course suggested here; however, the distinction is vital to maintain if we are to preserve the proper federal-state relationships essential to our constitutional system of government. Furthermore, it is sup-

ported, in the context of this case, by the salutary and statutorily mandated "exhaustion" principle.

## II

Although the abstruse facts surrounding this procedural controversy present somewhat of a never-ending maze, the legal issue presented is clear and narrow: whether the hearing on Johnson's right-to-appeal claim should be held in a state or federal court. This is so, since counsel agrees that Johnson is entitled to a full evidentiary hearing, at least in some forum,[9] on whether he has waived the right to litigate questions concerning his right to appeal from the judgment of sentence. At oral argument before this Court, the Commonwealth conceded that, as a matter of state law, the Wyoming County Court erred in rejecting as legally insufficient the offer of proof that Johnson had not been advised by post-conviction counsel, nor did he independently know, at the time of his prior post-conviction petition, that he had a right to appeal from the judgment of sentence. Thus, the Commonwealth acknowledged that Johnson must, as a matter of state law, be given a full evidentiary hearing on whether he waived the right to litigate his right-to-appeal claim. Moreover, the Commonwealth admits that the federal district court erred in holding that any deprivation of Johnson's right to appeal from the judgment of sentence was "nonprejudicial". The Commonwealth points out that under state law only on direct appeal could Johnson have raised the question whether the evidence presented at his trial was sufficient to support a finding of first degree murder.[10] And finally since

---

9. Part III of this opinion, *infra*, indicates that there is no federal habeas jurisdiction over Johnson's case and thus that at this point, at least, the hearing should not be held in a federal court.

10. Fully recognizing that only on direct appeal could Johnson have raised the claim that the evidence introduced at his state trial was insufficient to support a finding of first degree murder, *see* majority opin-

ion, fn. 2, it is still quite doubtful whether he has any real claim to argue on direct appeal from the judgment of sentence. It has already been held by the state courts and by the federal district court that petitioner's confession was not involuntary and that his guilty plea was knowingly and intelligently entered. These findings have not been questioned by the majority here, nor does an independent review of the record indicate that the district

counsel for the Commonwealth does not believe it will be possible to prove that Johnson waived the right to litigate his right-to-appeal claim, the Commonwealth concedes that petitioner is entitled to a state court hearing on whether he waived his right of direct appeal from the judgment of sentence.

It appears manifest, then, that open to Johnson is a presently available and unexhausted state remedy, namely, an appeal *nunc pro tunc* to the Pennsylvania Supreme Court from the Wyoming County Court judgment rejecting as legally insufficient the offer of proof made by Johnson's counsel at the waiver hearing. The Commonwealth indicates, and relevant state cases support its view,[11] that the Pennsylvania Supreme Court will undoubtedly grant Johnson's appeal *nunc pro tunc*, and, given the opportunity to correct the obvious error of

state law, would then reverse the Wyoming County Court judgment and remand for a hearing on the two waiver issues.[12] If, at that hearing, the lower state court finds that Johnson did not waive the right to litigate his right-to-appeal claim, he will be entitled, under state law, to a hearing on the question whether he waived his right of direct appeal from the judgment of sentence. If the lower court finds that Johnson did not waive his right of direct appeal, despite his failure to appeal within the prescribed time limits, an appeal from the judgment of sentence to the Pennsylvania Supreme Court would also lie, *nunc pro tunc.*

Because of a presently available state remedy, he should be remitted to the state system.[13] In addition to the fact that this disposition is required under federal law,[14] returning Johnson to the

court's determinations on these issues were erroneous. In addition, the principle set forth by the Supreme Court in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), may well foreclose any federal review of the voluntariness of Johnson's confession. A reading of the confession given by Johnson at the Tunkhannock Substation amply supports the conclusion that the murder of Mrs. Kutz was deliberate and premeditated. Johnson decided to go to Mrs. Kutz to obtain money. On his way to the house, he stopped at the "Ten Cent Store" to buy a pair of gloves so as not to leave fingerprints. Induced by his threats of serious physical harm, Mrs. Kutz gave Johnson a check for $800. He then strangled her with his hands and while she was still breathing, wrapped a lamp cord around her neck until she was dead. In view of the clearly inculpatory nature of Johnson's confession and the judgment of the state courts and the federal district court rejecting his confession and guilty plea claims, it would certainly not appear that petitioner has any ground to press in support of a sufficiency-of-the-evidence claim. Whether, in view of these facts, any denial of the right to appeal might be considered "harmless" for lack of injurious impact on petitioner is a question that does not require an answer now.

11. *See e. g.,* Commonwealth v. Wilson, 430 Pa. 1, 241 A.2d 760, 763–764 fn. 8

(1968); Commonwealth v. Beard, 211 Pa.Super. 756, 237 A.2d 847 (1968); Commonwealth ex rel. Robinson v. Myers, 420 Pa. 72, 215 A.2d 637 (1966). This Court has already recognized, on facts similar to those in the present case, that until petitioner has sought and been denied on appeal *nunc pro tunc,* he has not exhausted his state remedies. *See* United States ex rel. Cornitcher v. Rundle, 455 F.2d 514 (3d Cir. 1972), aff'g 315 F.Supp. 1300 (E.D.Pa.1970).

12. The two issues the lower court would have to consider on remand would be: (1) whether Johnson had waived the right to litigate his right-to-appeal claim, and if not (2) whether Johnson had waived his right to appeal from the judgment of sentence.

13. *See* Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); United States ex rel. Beard v. Rundle, 434 F.2d 588 (3d Cir. 1970).

14. 28 U.S.C.A. § 2254 (1971) in relevant part provides:
 "(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State,* or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the

pursuit of his available state remedies makes good, practical sense and, in the long run, will save valuable, federal judicial time. Only in the state system can Johnson's entire case be disposed of, for even if a federal court were to find that Johnson has not waived the right to litigate his right-to-appeal claim, and further, that he has not waived his right to appeal from the judgment of sentence, the case could be finally adjudicated only in the state system,[15] for the issue would still remain whether there was adequate evidence to raise his guilt from murder generally to murder in the first degree. Furthermore, requiring Johnson to exhaust his presently available state remedies, in addition to conforming to the command of federal law, serves the purposes for which the exhaustion principle stands: First, upholding the role of the state courts in applying and enforcing federal constitutional law and second, preserving the orderly administration of the state judicial system under which petitioners, like Johnson, reach state appellate courts that

have the opportunity to correct errors of federal law and, more germane to this case in its present posture, errors of state law.[16]

As to the majority's holding that the district court should retain jurisdiction over petitioner's case pending action by the state courts, I am *impelled* to disagree. Part III of this opinion indicates that there is, at least now, no federal jurisdiction in this case. Moreover, as Part IV demonstrates, whatever jurisdiction the district court may be thought to have, retention is improper in this case for reasons of federal-state comity.

### III

The first issue raised by the majority's holding, that the district court should retain jurisdiction, is whether this case falls within the habeas corpus jurisdiction of the federal courts. Put simply, if the federal district court does not have jurisdiction, then there is nothing for it to retain.[17]

rights of the prisoner." (emphasis supplied)

"(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, *by any available procedure*, the question presented." (emphasis supplied)

15. *Compare* Commonwealth v. Smulek, 446 Pa. 277, 284 A.2d 763 (1971).

16. *See* Developments—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1093–94 (1970).

17. The majority suggests that Johnson's case is analogous to this Court's decision in Johnston v. Marsh, 227 F.2d 528 (3d Cir. 1955). *See* majority opinion at 310. There, the petitioner applied to the district court for habeas relief, alleging a lack of due process in his state trial, and requested that he be admitted to bail pending an examination of his petition on the merits. The petitioner based his request for bail on the allegation "that he, as an advanced diabetic, was, under conditions of confinement, rapidly progressing toward total blindness." 227 F.2d at 529. The district court admitted him to bail,

conditioning the admission upon petitioner's going to and remaining in a hospital. On appeal, this Court noted that the district court had jurisdiction over the petitioner's case, at least jurisdiction to determine whether it had jurisdiction, and affirmed the grant of bail.

I have no quarrel with the proposition that a federal habeas court, exercising its authority "to act judicially," has the power to admit to bail a state prisoner desperately in need of immediate medical attention during the time between the attachment of limited jurisdiction to decide whether there is jurisdiction and the actual determination whether petitioner's allegations state a constitutional claim, and, thus, properly invoke federal habeas jurisdiction. Whether to *retain* jurisdiction over a case when available state remedies have not yet been exhausted, however, presents an entirely different situation. The distinction between admission to bail and retention of jurisdiction rests upon the fundamental difference between *limited jurisdiction* to determine whether there is jurisdiction and *broad jurisdiction* to hear the case on the merits after it has been decided that a constitutional claim has been alleged.

Federal habeas jurisdiction lies to test the legality of a confinement alleged to result, in part at least, from a violation of the federal Constitution.[18] Thus, federal habeas power can here exist only if petitioner can point to a federal constitutional transgression by the Commonwealth.[19] Aside from his confession and guilty plea claims, decided against him by the state courts and the federal district court,[20] and not questioned by the majority here, Johnson alleges that he has been denied the right to appeal and that he was never advised, nor was he independently aware, of his appellate rights. Whether such allegations, even if true, rise to a constitutional level presents a question of serious concern involving no little doubt. It is a matter for which there has been no Supreme Court guidance.

In determining the status of petitioner's allegations, it should be noted that the Constitution does not require the states to afford appellate review of criminal convictions.[21] There simply is no federal constitutional right to appeal. Thus, the mere averment that petitioner has been denied the right to appeal does not, without more, properly invoke the habeas jurisdiction of the federal courts.

Pennsylvania, as all other states, however, although not constitutionally required to do so, has elected to provide appellate review of criminal convictions as a matter of right.[22] Having made that choice, the Commonwealth must

Johnston v. Marsh relates solely to the power of a federal habeas court once the limited jurisdiction to determine jurisdiction has attached, but before the broader question of jurisdiction over the case has been decided. The question involved in the present case—whether to *retain* jurisdiction—can arise only *after* the second jurisdictional question has been answered, i. e., only *after* it has been decided that a federal constitutional claim has been asserted. Otherwise there is nothing to retain.

If, as Part III of this opinion indicates, there is no federal constitutional claim present, then the district court has no jurisdiction to retain. If a constitutional claim has been stated, the district court would have jurisdiction to hear the case, but would be foreclosed from doing so because of the exhaustion doctrine, *see* Part II, *supra*, and would not be permitted to retain jurisdiction because of the Supreme Court's decision in Slayton v. Smith, 404 U.S. 53, 92 S.Ct. 174, 30 L. Ed.2d 209 (1971). *See* Part IV, *infra*.

18. In the early part of this nation's history, the Supreme Court followed common law principles limiting the use of the writ to the release of prisoners confined by the judgment of a court without jurisdiction over the matter. *See, e. g.,* Ex Parte Kearney, 20 U.S. (7 Wheat.) 38, 5 L.Ed. 391 (1822). The concept of jurisdiction later began to expand, *see* Hans Nielsen, Petitioner, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889); Ex Parte Wilson, 114 U.S. 417, 5 S.Ct. 935, 29 L.Ed. 89 (1885);

Ex Parte Siebold, 100 U.S. 371, 25 L. Ed. 717 (1879); Ex Parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873), and was stretched to an extreme in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942), the Court expressly recognized that federal habeas jurisdiction would properly lie to examine constitutional claims as well as alleged jurisdictional defects. *See* Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L. Ed. 469 (1953), in which the Supreme Court held that federal habeas power was available to consider all federal constitutional questions raised by state petitioners.

19. There is no question concerning the jurisdiction, in the traditional sense, of the sentencing court over Johnson's case.

20. An independent review of the record and authorities does not persuade us that the determination of the district court on these issues was erroneous.

21. McKane v. Durston, 153 U.S. 684, 687–688, 14 S.Ct. 913, 38 L.Ed. 867 (1894); *see* Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

22. 19 P.S. § 1186 (1964). *See* Commonwealth ex rel. Scoleri v. Myers, 423 Pa. 558, 225 A.2d 540 (1967); Commonwealth ex rel. Newsome v. Myers, 422 Pa. 240, 220 A.2d 886 (1966); Commonwealth ex rel. Shadd v. Myers, 423 Pa. 82, 223 A.2d 296 (1966).

comply with federal constitutional requirements in administering its appellate apparatus.[23] As Justice Harlan once emphasized:

> "Of course the fact that appeals are not constitutionally required does not mean that a State is free of constitutional restraints in establishing the terms upon which appeals will be allowed. It does mean, however, that there is no 'right' to an appeal in the same sense that there is a right to a trial. Rather the constitutional right under the Due Process Clause is simply the right not to be denied an appeal for arbitrary or capricious reasons." [24]

Thus, if Johnson were here alleging that the Commonwealth denied him his state-conferred right to appeal in violation of the equal protection or the due process clause of the Fourteenth Amendment, he would then be asserting a federal constitutional claim appropriate to invoke federal habeas jurisdiction.

Johnson first claims that the Commonwealth denied him his right to appeal. Following Judge Sobeloff's advice that "where the layman's papers clearly show what he is driving at, it is usually in the interest of justice and may in the long run save time to temper the reading of the papers with a measure of tolerance," [25] we will assume, for the moment, that Johnson is alleging an *arbitrary or capricious* denial of his appellate rights. Although, under these circumstances, petitioner would be stating a constitutional claim, the allegation, when measured against the undisputed facts of this case, cannot sustain federal jurisdiction, since the record, briefs, and oral argument before this Court strongly demonstrate that the allegation is factually impossible to support.

The Commonwealth has not at all, much less arbitrarily or capriciously, denied petitioner his statutory right to appeal.[26] The uncontroverted fact is that Johnson has not attempted to appeal from the judgment of sentence. Instead, since 1954, he has filed more than fourteen petitions, seeking collateral relief. Until Johnson attempts to *appeal* to the Pennsylvania Supreme Court and is unsuccessful in doing so, there is no state action upon which a claim under the Fourteenth Amendment must be predicated.[27] He has at this time no federal constitutional claim based on the allegation that he has been denied his right to appeal.

Johnson's federal habeas petition next alleges that he was not advised, nor was he independently aware, of his state-conferred right to appeal from the judgment of sentence either in 1954 at the time of his conviction, or at the time of

---

23. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) ; Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

24. Griffin v. Illinois, 351 U.S. 12, 37, 76 S.Ct. 585, 599, 100 L.Ed. 891 (1956) (Harlan, J., concurring).

25. United States v. Glass, 317 F.2d 200, 202 (4th Cir. 1963).

26. Appellees' brief indicates that in 1957 Johnson did seek leave to file an appeal in the Pennsylvania Supreme Court without payment of filing fees. Although his petition was denied, the Supreme Court's action was based upon the nonpayment of filing fees, not Johnson's failure to appeal within the prescribed time limits. We also note that Johnson's allegation that he was unaware of the right to appeal from the judgment of sentence when he filed his first counselled PCHA petition in 1967, is somewhat incredible in view of his attempted appeal in 1957.

27. That the Fourteenth Amendment only applies to action by the state is clear. Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883) ; Ex Parte Virginia, 100 U.S. 339, 25 L.Ed. 676 (1880) ; United States ex rel. Smith v. McMann, 417 F.2d 648, 657–658 (2d Cir. 1969) (Friendly, J., dissenting). For more recent discussions of the state action requirement, *see* Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) ; Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) ; Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) ; Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

filing his 1967 PCHA petition. Analysis of this assertion must be segregated into two parts, since it is unclear upon which of two possible grounds petitioner's contention proceeds.

The first ground to which the allegation that Johnson was not advised or independently aware of his appellate rights may be relevant assumes as a major premise that the Commonwealth denied petitioner his right to appeal.[28] Thus, if Pennsylvania had denied Johnson his state-conferred right to appeal on the ground he failed to file the appeal in time and despite the fact (assumed for the moment to be true) that he was unaware of his right to appeal, a serious due process question would be raised. Such a denial would represent a holding that Johnson had waived rights of which he was unaware.[29] Because, however, Johnson has not attempted to appeal and, therefore, has not been denied his right to appeal, the question whether denial of the right to appeal, under the circumstances hypothesized above, would violate due process does not require an authoritative answer at this time. Since Johnson a fortiori cannot prove the existence of state action,[30] the legal and factual predicate for this contention, federal habeas jurisdiction cannot be bottomed on this theory.

The second possible ground on which Johnson may be alleging that he was not advised or independently aware of his right to appeal rests upon a different basis. Johnson may simply be claiming that, whether or not the state has denied him his right to appeal, he has an independent constitutional right to be informed of the right to appeal with the assistance of counsel.[31] Since this alle-

---

28. As indicated, this assumption cannot be factually supported. There is no state action in this case upon which to predicate this contention.

29. *See* United States ex rel. Bolognese v. Brierley, 412 F.2d 193, 197 (3d Cir. 1969). The factual setting under which the scenario suggested in the text would occur can be easily developed. Johnson would file his notice of appeal. Noting that the proper time for an appeal had expired nearly nineteen years ago, the Pennsylvania court would ask Johnson why he should be permitted to appeal. Johnson would reply that his appeal is late because he had never been advised nor independently aware of his right to appeal. The state court would then have to determine whether under state law Johnson had waived his right to appeal or whether his allegation of lack of knowledge excused his earlier failure to appeal within the proper time limits.

The majority states that I am suggesting that there is no federal habeas jurisdiction here, "because this circuit has not yet decided whether notice of the right to appeal . . . is a prerequisite for the effective waiver of appeal rights recognized in Douglas v. California. . . ."

On the contrary, as the text of this opinion reveals, I am quite prepared to assume, at this time, that a due process violation would occur should a state court find, in the circumstances hypothesized above, that petitioner had waived a right of which he was allegedly not advised or

independently aware. Such issue does not arise in this case, however, since Johnson has not yet been denied his right to appeal. In other words, only if the state court were to find that Johnson had *waived* his right to appeal would the due process problem indicated here be present.

The question that my opinion does suggest is open in this Circuit is whether there is an independent federal constitutional right to be advised of the right to appeal with the assistance of counsel—independent in the sense that it depends not upon the existence of state action in denying the right to appeal, but upon the failure of the state to fulfill an alleged, affirmative constitutional duty to provide such advice. Since the circumstances developed above have not yet occurred, Johnson must be basing his habeas petition on the alleged existence of such an independent constitutional right. Such a claim does not, in my view, properly invoke the habeas jurisdiction of a federal court. *See* text following fn. 28, *infra*.

30. *See* text accompanying fn. 27, *supra*.

31. Of course, Johnson is in reality claiming the existence of two rights, though the content of each is the same: (1) the right to be informed of his right to appeal from the judgment of sentence, by court or counsel, at the time of his conviction in 1954; and (2) the right to be informed, by post-conviction counsel, of his right to appeal from the judgment of sentence when he filed his first counselled post-

gation depends not on the existence of state action in denying his right to appeal, but rather upon the state's inaction in failing to fulfill an affirmative constitutional duty, it must be separately considered.

Unfortunately, a review of the cases does not provide a definitive answer to these issues. The federal courts that have considered the problem are in a state of disarray both in terms of whether such a constitutional right exists, and if so, from which portion of the Constitution it is derived.[32]

Although this Court has not yet squarely faced the question, United States ex rel. O'Brien v. Maroney[33] may bear, at least peripherally, upon the is-sue. In that case, petitioner was convicted of robbery and burglary and sentenced to serve eight to twenty years in prison. He did not appeal. Nine years after his trial, he filed a PCHA petition alleging that he had been denied his right to appeal from judgment of conviction and sentence. The state court dismissed the petition and was affirmed on appeal. Two years later, petitioner sought, and was denied, federal habeas relief. On appeal, this Court first noted, in examining the evidence, that petitioner was aware of his right to appeal at the time of his conviction, had the assistance of privately retained counsel at the post-trial stage, and understood that his attorney, though requested to file an appeal, did not intend to do so.

conviction petition in 1967. The question whether the district court has jurisdiction in this case depends entirely upon whether there is a constitutional right to be informed of the right to appeal from judgment of sentence, by court or counsel, *at the time of conviction*. If such a right does exist, then there is federal habeas jurisdiction in this case. But, only if the state courts deny Johnson the opportunity to litigate his right-to-appeal claim will the question arise whether Johnson was informed or aware of his right to appeal from judgment of sentence *when he filed his first PCHA petition*. If such denial should occur, the federal court will have to decide whether petitioner has "deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies." *See* Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

There is no need to decide this issue at the present time.

32. For example, the Second Circuit has held that such a right does exist under the equal protection clause. United States ex rel. Smith v. McMann, 417 F.2d 648 (2d Cir. 1969) (en banc), cert. denied, 397 U.S. 925, 90 S.Ct. 929, 25 L.Ed.2d 105 (1970). The majority's holding, however, prompted Judge Friendly to write a dissenting opinion, joined by Judges Lumbard and Moore, in which he raised many of the analytical problems noted here. Indicating that the majority opinion had not pointed to any action by the state in depriving petitioner of his constitutional rights, *id.* at 657-658, he concluded that the majority's holding must rest upon the assumption that the state has an affirmative, constitutional duty to advise criminal defendants of their appellate rights. *Id.* at 658. At least on the facts of *Smith*, the dissenters were unwilling to so assume.

In United States ex rel. Singleton v. Woods, 440 F.2d 835 (7th Cir. 1971), the Seventh Circuit expressly recognized, under the equal protection clause, a constitutional right to be advised of the right to appeal. That case is, however, factually distinguishable from the present case. In *Woods*, petitioner attempted to take an appeal, but was affirmatively denied the opportunity to do so, despite his contention that he had not been advised, nor independently aware, of his right to appeal. As the Court of Appeals said: "[H]is failure to timely appeal was therefore excusable." *Id.* at 838. For other cases concerning this question, *see* Giles v. Beto, 437 F.2d 192 (5th Cir. 1971) (per curiam) (no constitutional right to be advised of right to appeal); Goodwin v. Cardwell, 432 F.2d 521 (6th Cir. 1970); Nelson v. Peyton, 415 F.2d 1154 (4th Cir. 1969) (failure of counsel to advise of right to appeal constitutes denial of effective assistance of counsel), cert. denied, Cox v. Nelson, 397 U.S. 1007, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970); United States ex rel. Laughlin v. Russell, 282 F.Supp. 106, 113-114 (E.D.Pa.1968) (no constitutional right). It is interesting to note that the Pennsylvania Supreme Court has recognized the existence of such a federal constitutional right. Commonwealth v. Wilson, 430 Pa. 1, 241 A.2d 760 (1968).

33. 423 F.2d 865 (3d Cir. 1970).

Rejecting the claim that petitioner had been denied the effective assistance of counsel, since O'Brien had acquiesced in the decision not to appeal, the Court examined the question whether petitioner, if indigent at the post-trial stage, had been denied equal protection of the law by the state court's failure to advise him of the right to appeal with the assistance of counsel. On this question, the Court held that in a case where the state has no way of knowing that petitioner wants to appeal, or that petitioner is indigent and is unaware that counsel will be appointed if he desires, or that petitioner is unaware of his right to appeal, there is no state action by virtue of the state court's failure to advise the petitioner of his appellate rights.[34]

An analysis of *Maroney* demonstrates that this Court only established that the state has no affirmative duty to advise a criminal defendant of his right to appeal with the assistance of counsel, at least where it has no knowledge that he is indigent and desires to appeal. Only by a "negative pregnant" may one draw from *Maroney* the proposition that the state is under a general affirmative, constitutional duty to so advise in cases presenting different factual backgrounds.

Since the various courts that have considered this question are split, and since this Circuit has yet to face the precise issue presented here, in the absence of briefs and oral argument on the issue, we should not at this point assume that such a constitutional right (i. e., to be advised of the right to appeal) exists. Yet, that is the effect of the majority

opinion, for by ordering the lower court to retain jurisdiction, the majority recognizes sub silentio the existence of a constitutional right. At this point, the most that can fairly be said is that no showing has been made whether the right to be advised regarding an appeal exists or not.

Of course, to the extent the absence of such a constitutional right cannot be shown, the federal court would nonetheless have jurisdiction to determine whether it has habeas corpus jurisdiction.[35] Thus, whatever jurisdiction the district court may be thought to have in this case, it is at least no more, at present, than jurisdiction to determine whether the right asserted by Johnson is of federal constitutional dimension.

Such a limited jurisdiction does not, however, permit the federal court to retain jurisdiction over Johnson's case, pending his exhaustion of available state remedies, since the retention of jurisdiction at least implies, if not requires, that a federal constitutional claim has in fact been asserted. But neither the district court, nor any other tribunal, has made such finding. Indeed, by seeking to invoke a district court's habeas corpus jurisdiction, petitioner carried the burden of affirmatively showing the presence of jurisdictional prerequisites, here that his federal constitutional rights had been violated. In alleging only the violation of a right to be advised of the right to appeal, Johnson has failed to meet the burden of demonstrating that what he alleges, if true, consti-

34. That petitioner pleaded guilty is another factor which should be taken into account in determining whether the state was under an affirmative constitutional duty to provide advice about the right to appeal. For example, in United States ex rel. Roldan v. Follette, 450 F.2d 514 (2d Cir. 1971), the Second Circuit strongly suggested that the *Smith* rationale, see fn. 27 *supra*, might not apply to a case in which petitioner pleads guilty. *Id.* at 516. *Cf.* Fed.R.Crim.P. 32(a)(2), requiring the Court to advise a defendant who "has gone to trial on a plea of not guilty" of his

right to appeal. The Committee on Rules of Practice and Procedure of the Judicial Conference of the United States has proposed for federal courts that there "be no duty on the court to advise the defendant of any right to appeal after sentence is imposed following a plea of guilty." Prelim. Draft of Proposed Amendments to Fed.R.Crim.P. at 32.

35. *See* Wheeldin v. Wheeler, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

tutes a transgression of a federal constitutional right.

Thus, even if it were true, as a general matter, that the federal court may retain jurisdiction in cases where the petitioner asserts the violation of a right that is, in fact, of constitutional dimension, despite the petitioner's failure to exhaust available state remedies, that principle would have no application to Johnson's case. Here, petitioner has in no way demonstrated that it is a constitutional right that has been violated. Under such circumstances, where the burden of proof on that issue rests upon petitioner, the jurisdiction to determine jurisdiction is at an end, and the petition should be dismissed.

### IV

Assuming, arguendo, that the district court has jurisdiction in this case, we begin the analysis of the question whether retention of jurisdiction is appropriate here from the premise that the exhaustion doctrine finds its roots not in any lack of federal power in habeas corpus cases where state remedies are presently available and unexhausted, but in considerations of federal-state comity. The exhaustion rule, now codified in the federal habeas statute, represents a federal policy, not the lack of federal judicial power.[36]

In Slayton v. Smith,[37] petitioner alleged in a federal habeas petition, among other things, that he had been tried and sentenced in the state courts by a senile judge. On appeal from the district court's dismissal of the petition without a hearing, the Fourth Circuit held that state remedies had not been exhausted, vacated the district court's judgment, and remanded for further proceedings with instructions to stay the

case until petitioner had sought relief in the state courts. In a *per curiam* opinion, the Supreme Court held that retention of the case by the federal district court was improper. "[A]bsent special circumstances, . . . rather than ordering retention of the case on the District Court's docket, the Court of Appeals should simply have vacated the judgment of the lower court and directed dismissal of the petition for failure to exhaust state remedies."[38]

A search for the rationale of *Slayton* must begin with an examination of the reasons for the exhaustion doctrine itself. The principle of federal-state comity that spawned the exhaustion doctrine is multi-faceted and serves more than merely the twin purposes of preserving the role of state courts both in applying and enforcing federal law and in administering in an orderly fashion state judicial business.[39] These purposes are adequately served whenever a federal habeas petitioner is required to exhaust presently available state remedies before seeking federal habeas relief, just as the majority requires in this case.

Yet, the doctrine of federal-state comity serves other purposes as well. For example, it also insulates the state courts, to some extent, from the psychological pressure that arises in our federal system whenever it is clear that a particular case can be brought to the federal system after adjudication by state courts. This stress, and the resulting friction it can create, are, of course, somewhat inevitable in a system in which the courts of one jurisdiction, federal, can effectively cause the release of a prisoner found guilty of a crime by the courts of another jurisdiction, state. The chance that some abrasion may occur is a risk justifiable only when neces-

---

36. *See* Wilwording v. Swenson, 404 U.S. 249, 250, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Fay v. Noia, 372 U.S. 391, 415–420, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455 (1939); United States ex rel. Gockley v. Myers, 411 F.2d 216, 219 (3d Cir. 1969).

37. 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971).

38. *Id.* at 54, 92 S.Ct. 174 at 175 (citations omitted).

39. *See* text accompanying note 16, *supra*.

sary to insure that constitutional rights are adequately protected. And, thus, even after a state prisoner has had the opportunity to present his federal constitutional claims to a state court that has made a decision on the merits rejecting his contentions, he may file a habeas petition in a federal court and again be heard on the same claims by a forum with the power to cause his release.

The possible friction and pressure duplicate review may create in our federal system can, however, be kept to a minimum without impairing in any way its value in affording protection to constitutional rights. In the vast majority of cases, a state prisoner's constitutional rights are sufficiently protected by simply leaving open to him a federal avenue of relief—habeas corpus—he can pursue after exhausting available state remedies. There is plainly no need in these cases to retain jurisdiction. And since no such need is present, there is no reason to take the chance that additional friction, beyond that caused by merely permitting the filing of a new habeas petition, may arise from the retention of jurisdiction and obtrude further upon the sensitive relationship between the federal and state systems. Cases will no doubt arise where, because outright dismissal of the habeas petition might compromise the vindication of a petitioner's rights, an affirmative reason will be present to justify retaining habeas jurisdiction and taking the risk of additional pressure to our federal system.[40] It is, however, sufficient to say here that Johnson's case is not one of them.

Johnson has not alleged, nor has he in any way attempted to show, that the state courts have "dragged their heels" or otherwise frustrated the orderly disposition of his constitutional claims. The Pennsylvania Supreme Court gave full, prompt, and sympathetic consideration to Johnson's guilty plea and confession averments, and remanded for a hearing on the question whether petitioner had waived the right to litigate his right-to-appeal contention. Indeed, when it is considered that Johnson has filed at least fourteen petitions in the state courts and has taken two appeals to the Pennsylvania Supreme Court, the patient and orderly disposition of Johnson's claims by the state courts can hardly be criticized. The simple truth is that on remand the Wyoming County Court committed, as the Commonwealth now concedes, an error of state law in rejecting the offer of proof made by Johnson's counsel. In the commission of this error there was not the slightest hint of purposeful delay. On the contrary, courts do make mistakes and it

40. In Slayton as possible examples of "special circumstances" that may justify retaining habeas jurisdiction pending exhaustion of state remedies, the Supreme Court cited Nelson v. George, 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970), and Wade v. Wilson, 396 U.S. 282, 90 S.Ct. 501, 24 L.Ed.2d 470 (1970). Neither case involved factual situations resembling that present in Johnson's case.

It should also be noted that in United States ex rel. Gockley v. Myers, 411 F.2d 216 (3d Cir. 1969), this Court held that because of "exceptional circumstances," the district court should hear petitioner's case, despite his failure to exhaust available state remedies. Basing its decision on the notion that exhaustion stems from principles of comity, not the lack of federal power, the Court employed a balancing approach. As Slayton reveals, however, balancing works both ways. In my view, the norm in habeas cases where there has been no exhaustion should be dismissed of the petition. See Slayton v. Smith, 404 U.S. 53, 54, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971); United States ex rel. Wilson v. Rowe, 454 F.2d 585 (7th Cir.), cert. denied, 406 U.S. 909, 92 S.Ct. 1618, 31 L.Ed.2d 820 (1972). Where affirmative reasons of an unusual nature are present retention of federal habeas jurisdiction may be proper. Cf. Nelson v. George, 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970); Wade v. Wilson, 396 U.S. 282, 90 S.Ct. 501, 24 L.Ed.2d 470 (1970). Only where "exceptional circumstances" are present and clearly indicate that requiring exhaustion will cause manifest injustice to petitioner, should the district court go beyond retaining jurisdiction and decide the case, as in Gockley, before petitioner has exhausted his state remedies.

was, no doubt, in part for this reason, that Pennsylvania provides an orderly system of appellate review. Not only could this error of state law have been corrected at that time by direct appeal to the Pennsylvania Supreme Court, but it clearly appears that the state court system now stands ready to correct the mistake. Under these circumstances, when the state appellate courts appear ready to correct whatever errors may have been committed by lower state courts, there is little, if any, danger to the vindication of petitioner's rights. Certainly under these conditions, the chance and degree of any possible prejudice are insufficient to justify retaining jurisdiction. And to the extent that petitioner is later dissatisfied with the fairness and adequacy shown by the state courts to his contention, there is nothing to bar him from filing a new petition for habeas corpus in the federal district court.

Since no valid purpose appears to be served by the retention of habeas jurisdiction by the district court in this case, and since there is no hint that petitioner will receive less than fair treatment in the state system, I would dismiss the petition and forego holding a psychological club over the heads of conscientious state judges.

## CONCLUSION

I am aware that in painstakingly describing the many details and events involved in this complex case and delineating what may appear to be overlapping legal rights, both state and federal, I may be criticized for what some may believe is an overly academic and formalistic approach, because the ultimate disposition of Johnson's case does not depend upon the particular analysis employed on the retention-of-jurisdiction issue. But an appellate court must, in deciding the actual controversy before it, consider the enduring legal issues that may be hidden within what it conceives to be the immediate problem.

Federal habeas jurisdiction is just such an enduring issue. We must be alert that we do not lose the substance by dealing with the shadows. Experience teaches that a cavalier approach to an interpretation of the scope of federal habeas jurisdiction can have great impact on our judicial system. It can multiply the burden on the federal courts while undermining, at the same time, the morale of our sister, state courts. Moreover, it can shift imperceptibly the locus of power within our system of government. The Founders of this country understood in no abstract way, and we are becoming increasingly aware, that to protect the rights of the people, power must be dispersed and divided among our governmental institutions. Aside from providing the doctrinal underpinning for the *horizontal* separation of powers within the federal government, "the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy," [41] finds constitutional recognition in the *vertical* division of power between the federal government and the states. The federal courts, no less than the political branches of the federal government, should carefully guard against exercising power not within the scope of their constitutional authority.

We must be ever aware of the reach of consequences of decisions that to some may seem commonplace, but in context are wide-ranging. The task of federal courts in habeas proceedings by state prisoners, as I perceive it, is to reconcile two important interests embodied in the Constitution: The right of individual defendants to treatment by the states consonant with constitutional safeguards, and the interest of the states in conducting their criminal justice systems without interference, so long as they do not run afoul of rights protected by the Constitution.

The federal courts can discharge their assignment best, in a case such as Johnson's, by requiring the federal petitioner

41. San Diego Bldg. Trades Council, etc. v. Garmon, 359 U.S. 236, 243, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

to assert any constitutional claims he may have in a state forum. We should at the same time reserve the practice of retaining federal habeas jurisdiction for only those few, exceptional cases clearly demanding it. The federal court system must not become the haven to which state prisoners instinctively run for the chivalrous defense of every constitutional right allegedly denied. Instead, the federal courts should remain the proper forum for the protection of constitutional rights that would, in the absence of federal interposition, be ignored.

For these reasons, I would vacate the order of the district court denying the habeas corpus petition with directions that the petition be dismissed for failure to exhaust available state remedies. Then, if any federal constitutional rights have not been vindicated by the state courts, Johnson would be able to file a new federal habeas petition.

Judge HUNTER has authorized me to note his concurrence in this opinion; Judge VAN DUSEN concurs in the result reached by this opinion. *See* Slayton v. Smith, 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971).

KALODNER, Circuit Judge (dissenting in part).

I disagree with the majority's disposition in the respect that it remands the cause to the District Court with directions to "retain jurisdiction" pending exhaustion of the appellant's available state remedy.

I am of the opinion that we should do no more than vacate the Order of the District Court denying the appellant's habeas corpus petition, with directions to dismiss the petition for failure to exhaust an undisputed available state remedy. As Judge Adams has pointed out, it was recently squarely held in Slayton v. Smith, 404 U.S. 53, 54, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971), that "absent special circumstances" a federal court should not "retain jurisdiction" where a petition for habeas corpus relief must be dismissed for failure to exhaust an available state remedy. Here, there are no "special circumstances" requiring retention of jurisdiction. If the appellant is unsuccessful in the exhaustion of his available state remedy he may readily apply for federal habeas corpus relief. The appellant's expertise on the score of habeas corpus relief is amply demonstrated by the fact that he has, during his incarceration, filed ten habeas corpus petitions—nine in the Pennsylvania courts and one in the federal court. I am in full accord with Judge Adams' view that the federal-state comity doctrine is ill-served by the majority's direction to the District Court to retain jurisdiction pending the appellant's exhaustion of his available state remedy. Federal courts should abstain, under the comity doctrine, from wielding a policeman's nightstick with respect to a state court's administration of justice.

This, too, must be said:

In justifying its direction to the District Court to retain jurisdiction pending outcome of the appellant's exhaustion of his available state remedy, the majority says on the last page of its opinion:

"Deference to an available state court remedy does not imply powerlessness to afford the petitioner a prompt hearing when by reason of delay the state process may prove to be ineffective to protect the rights of the prisoner. 28 U.S.C. § 2254(b); Commonwealth ex rel. Craig v. Maroney, 348 F.2d 22, 33 (3d Cir. 1965), cert. denied, 384 U.S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042 (1966); In re Ernst, 294 F.2d 556, 561 (3d Cir.), cert. denied, 368 U.S. 917, 82 S.Ct. 198, 7 L. Ed.2d 132 (1961)."

The Achilles heel of the quoted statement is that here the majority has *not* found that "by reason of delay the state process may prove to be ineffective to protect the rights of the prisoner."

Section 2254(b) permits granting of the habeas corpus writ where (1) available state remedies have been exhausted; or, (2) there is an "absence" of an avail-

able state remedy; or, (3) an available state remedy, under existing circumstances, is, or would be, "ineffective to protect the rights of the prisoner." Here the majority has found that a state remedy is available and that the appellant has failed to exhaust it, and critically, *it has not found* that the available remedy, under existing circumstances, is, or would be, "ineffective to protect the rights" of the appellant. That being so, the habeas relief sought is unavailable to the appellant. There is nothing said in § 2254(b) which even remotely suggests that where a federal court is required to dismiss a habeas corpus petition because of failure to exhaust an available state remedy, that it may retain jurisdiction of the dismissed petition pending outcome of future exercise of the available remedy.

The *Craig* and *Ernst* decisions, cited by the majority, do no more than hold that a federal court may deny a habeas corpus petition, on its merits, even though there has been no exhaustion of an available state remedy.