**Viola J. CANFORA, Petitioner,**

v.

**Marilyn DAVENPORT, Superintendent, Correctional Institution for Women, Clinton, New Jersey, Respondent.**

**Civ. A. No. 1724–72.**

United States District Court, D. New Jersey.

Nov. 17, 1972.

Herman J. Ziegler, East Orange, N. J., for petitioner.

Joseph P. Lordi, Prosecutor of Essex County by Ralph J. Jabbour, Newark, N. J., for respondent.

## OPINION AND ORDER

LACEY, District Judge:

Petitioner is an inmate of the Correctional Institution for Women at Clinton, New Jersey. She seeks herein a declaration of fourteenth amendment unconstitutionality, on equal protection grounds, of the state statute under which she was sentenced; and, if successful, either her immediate release by writ of habeas corpus issued by this tribunal, or a judgment herein that a writ of habeas corpus issue unless she is resentenced by the state pursuant to a statutory scheme which, she urges, would result promptly in her parole. For the reasons hereinafter set forth, her petition is denied.

Petitioner, a 39-year old wife and mother, pleaded guilty to bookmaking (N.J.S. 2A:112-3) on May 21, 1970, in Essex County Court, and was sentenced to a minimum-maximum sentence of one to two years by Superior Court Judge James R. Giuliano.[1] Ironically, in view of the instant issue, she was dissatisfied with this sentence and appealed it on severity grounds, although, as was noted in the state courts, a search of her apartment at the time of her apprehension revealed more than $3,000 in horse bets, $1,000 in numbers bets, and more than $4,000 in sports bets, evidencing, in

---

[1]. Petitioner was sentenced under N.J.S. 2A:164-17 which reads:

All sentences to the New Jersey State Prison shall be for a maximum and minimum term, except sentences for life. The maximum term shall not be in excess of the maximum term prescribed by law for the offense for which the offender was convicted. The minimum term shall not be less than 1 year. Commutation time for good behavior, as provided by law, shall be allowed on both the maximum and minimum terms. Nothing contained in this section shall be construed to repeal or affect the power of the courts to suspend the imposition or execution of sentence and place the offender on probation. The sentence of the court shall include a determination as to whether the prisoner was convicted and sentenced as a second, third or fourth offender as provided in sections 2A:85-8, 2A:85-9, 2A:85-12 and 2A:85-13 of this Title and the commitment or order of sentence which directs the prisoner's confinement shall specify therein whether he is convicted and sentenced as a second, third or fourth offender.

the opinion of the Appellate Division, that "she was engaged in a large-scale bookmaking operation." (Appellate Division Opinion, April 13, 1971). Her appeal was denied but the Appellate Division directed that the sentence be changed to an indeterminate sentence under N.J.S. 30:4–155, which was done by the trial court on April 30, 1971.[2]

She began serving her sentence on April 30, 1971, was released on May 21, 1971, to care for an ill child, and resumed confinement on May 16, 1972.

In accordance with procedures at the institution of her confinement, she was, shortly after resuming her confinement last May, advised that her projected date of release was in March, 1973. However, this date has been moved up to January 11, 1973, contingent upon good behavior.

Petitioner's assertion of equal protection unconstitutionality is founded upon the following reasoning, which has at its core her claim of a statutory-created and constitutionally impermissible difference in sentencing between men and women convicted of violating the aforesaid bookmaking act (N.J.S. 2A:112–3).

Her contentions are: Had she been a male she would have received no more than a minimum-maximum sentence of one year to two years at State Prison, under N.J.S. 2A:164–17 (the sentence originally imposed by Judge Giuliano), which gives the sentencing judge discretion to fix a minimum-maximum term, with the maximum being allowably less than the five years imposed by that statute. This optimistic prediction derives from Justice Hall's opinion in State v. Costello, 59 N.J. 334, 343, 282 A.2d 748 (1971), where, in dealing with a female also convicted of a violation of 2A:112–3, he stated:

. . . The specific result she seeks is a requirement that she receive a minimum-maximum sentence, fixed by the judge, the same as if she were a male being sentenced to the state prison. The contention may be made more concrete by an example. Defendant *could* be held on the bookmaking conviction for as long as five years (although it is most unlikely that she would be). A first offender male, convicted of the same crime, would likely receive a state prison sentence of not less than one nor more than two years. He could not be confined for more than two years, less good behavior and work credits, and, assuming maximum such credits, would be eligible for parole, and, considering the nature of the offense, quite likely paroled in 4 months and 28 days. See Administrative Office of the Courts, Sentencing Manual for

2. N.J.S. 30:4–155 provides:

The several courts in sentencing to the Women's Reformatory shall not fix or limit the duration of the sentence, except as otherwise provided for herein, but the time which the prisoner shall serve in the reformatory or on parole shall not exceed five years, except for the crimes of murder or manslaughter, or the maximum term provided by law for the offense of which the prisoner is convicted and sentenced if such maximum be less than five years; *provided, however*, that the court, in its discretion, for good cause shown, may impose a sentence greater than five years, but in no case greater than the maximum provided by law, and the commitment shall specify in every case the maximum of the sentence so imposed. The term may be terminated by the board of managers in accordance with its rules and regulations.

Any female convicted of murder or manslaughter shall be sentenced to confinement in the Reformatory for Women at Clinton. Every such sentence shall be for a maximum and minimum term, except sentences for life. The maximum term shall not be in excess of the maximum term prescribed by law for the offense for which the offender was convicted, and the minimum term shall not be less than the minimum term prescribed by law for the offense for which the offender was convicted, and in no event less than one year. Commutation time for good behavior, as provided by section 30:4–140 of the Revised Statutes, shall be allowed on both such maximum and minimum terms. Nothing herein contained shall be construed to apply to the sentence of death.

Judges (July 1971 edition), Appendix B.

Petitioner leans heavily upon another portion of *Costello* wherein Justice Hall wrote (59 N.J. at 342–343, 282 A.2d at 752–753):

There is, however, a considerable distinction between the nature and effect of sentences of males to the state prison and of females to the Correctional Institution for Women who would have been committed to the state prison had they been males (except with respect to women sentenced to minimum-maximum terms or life for murder or manslaughter pursuant to N.J. S.A. 30:4–155). First, in the case of males, minimum and maximum terms are fixed by the judge and the maximum may be less than the statutory maximum permitted for the particular crime. In the case of females, the sentence must be for an indeterminate term with the maximum fixed by N.J.S.A. 30:4–155 at five years or that prescribed by the statute governing the particular crime if such is less than five years. The sentencing judge may not prescribe a lesser maximum (State v. Lavender, 113 N.J.Super. 576, 274 A.2d 611 (App.Div. 1971)), but he may, pursuant to the cited section, for good cause, direct a greater maximum up to that authorized by the statute governing the crime. Second, the minimum-maximum sentences of male inmates of the state prison are reduced for "continuous orderly deportment" in accordance with a schedule prescribed in N.J.S.A. 30:4–140. Comparable inmates of the women's institution receive no such benefit. (As to sentence credits for work performed, see N.J.S.A. 30:4–92.) Third, male inmates of the state prison are eligible for parole consideration by the State Parole Board when a certain statutorily designated portion of the sentence has been served. N.J.S.A. 30:4–123.10 and 123.12. (This does not, of course, mean that every inmate will be released on parole when he is first eligible for consideration.) There is no such provision relating to inmates of the women's institution; as to them, as we have said, release and consideration therefor is entirely in the hands of the board of managers without any statutory directions or guidelines.

Against this background, petitioner argues she is the victim of unlawful sex discrimination in that "she will be required to serve 8 months for an offense for which a male would ordinarily serve 4 months and 28 days," and that she "has already served 5 months, 5 days, as of October 16, 1972." (Petition, paras. 10–11).

The claim tendered by this petition was the subject of an application by petitioner for state post-conviction relief, R. 3:22, addressed to Judge Giuliano, and requesting the vacating of the indeterminate sentence and entry of a fixed minimum-maximum sentence. The application was denied on September 8, 1972. Appeal therefrom was taken to the Appellate Division, Docket No. A–119–72, and, in connection therewith, petitioner applied for bail release pending the appeal's outcome. On April 26, 1972, bail was denied by the Appellate Division. Thereafter, petitioner applied to the Supreme Court of New Jersey to fix bail pursuant to Rules 2:9–4 and 2:9–8, pending the outcome of petitioner's appeal (which has been or will be consolidated with several other cases involving the identical issue). The Supreme Court denied bail on October 4, 1972. The petition herein was thereafter filed on October 19, 1972.

Ever since Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), it has been well settled that "a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus. . . . " Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

**1024**

■ The exhaustion doctrine, now codified in 28 U.S.C. § 2254,[3] reflects a policy of federal deference, based on comity, to state processes. Fay v. Noia, 372 U.S. 391, 419–420, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455 (1939). Peculiarly apt is the Supreme Court's recent expression that the doctrine is "an accommodation of our federal system designed to give the State the initial 'opportunity to pass upon and correct' alleged violations of its prisoners' rights." Wilwording v. Swenson, 404 U.S. 249, 250, 92 S.Ct. 407, 408–409, 30 L.Ed.2d 418 (1971). *See also,* United States ex rel. Gockley v. Myers, 411 F.2d 216, 219 (3d Cir. 1969), cert. denied, 404 U.S. 1063, 92 S.Ct. 738, 30 L.Ed.2d 752 (1972); Developments —Federal Habeas Corpus, 83 Harv.L. Rev. 1038, 1093–1094 (1970). Carefully to be avoided are the unfortunate clashes that can result from premature federal court interference with the orderly functioning of state judicial processes. United States ex rel. Goodman v. Kehl, 456 F.2d 863 (2d Cir. 1972). Carefully to be nurtured is that "fragile balance of federal-state relationships so essential to the proper functioning of our system of government." United States ex rel. Johnson v. Cavell, 468 F.2d 304 (3d Cir. 1972), concurring and dissenting opinion of Circuit Judge Adams, p. 309.

Petitioner urges that this court make a determination of unconstitutionality at a time when the very issue at stake awaits state appellate court decision. A sense of history, a regard for what Justice Black has styled "Our Federalism," and a perception of the delicate balance of the vertical division of power between the federal government and the states, stay our hand. Habeas corpus has potential for good and bad. It calls for judicial reconciliation of two often competing constitutionally protected interests: The rights of individual defendants, and the interest of the states in their proper exercise of their judicial processes. Misuse of the "great Writ" erodes its vitality and undermines the federal-state relationship.

We would do a disservice to petitioner's presentation were we to stop here, however. Seemingly, she recognizes the doctrine of exhaustion, but argues she comes within its exception, to wit, that her available state remedy is "ineffective to protect the rights of the prisoner", 28 U.S.C. § 2254, in that, by the time her appeal is argued and decided, she will no longer be confined. Indeed, she argues that she has already been confined longer than warranted by the constitutional principles of equal protection she now invokes. Thus, she says, her claim will be moot, given the ordinary time development of the state court appellate processes.

■ Under certain circumstances petitioner's claim might carry the day. *Cf.* Slayton v. Smith, 404 U.S. 53, 54, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971); Nelson v. George, 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970); Wade v. Wilson, 396 U.S. 282, 90 S.Ct. 501, 24 L.Ed.2d 470 (1970); United States ex rel. Gockley v. Myers, 411 F.2d 216 (3d Cir. 1969), cert. denied, 404 U.S. 1063, 92 S.Ct. 738, 30 L.Ed.2d 752 (1972). Thus, in *Gockley,* the Court of Appeals held that because of "exceptional circumstances" the district court should hear petitioner's case, despite his failure

3. 28 U.S.C. § 2254 states:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circum-

stances rendering such process ineffective to protect the rights of the prisoner.

An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

to exhaust available state remedies. We do not find such "exceptional circumstances" here as would warrant our waiving the exhaustion requirement.

Petitioner does not allege, nor has she attempted to show, that the state courts have in any way frustrated the orderly disposition of her constitutional claim. She began her confinement in April, 1971. It was on her own application that she was released for approximately a year, returning to jail in May of this year.[4] *Costello* was decided in October, 1971. Petitioner did not invoke its principles until September of this year. It is petitioner herself who has created the chronology, not the state court process.

Moreover, what time would be saved were this Court to waive the exhaustion requirement? Our views coincide with *Costello*, that the disparate sentencing complained of is discriminatory and rests a heavy burden upon the state to justify it.[5] Like the *Costello* court, we believe a hearing is indicated. 59 N.J. at 346, 282 A.2d 748.

Counsel have advised that the *Costello*-directed hearing was never held because the defendant therein, cooperating with the authorities, apparently benefited thereby in a pragmatic sense. They further advised that a *Costello*-type hearing, as directed, was, however, held in June, 1972, in State v. Vacca, unreported, Indictment No. I. 455–69, Superior Court of New Jersey, Law Division, Middlesex County, before Superior Court Judge Charles M. Morris, Jr. At my request, the transcript thereof was forwarded to me. Its 600 pages contain factual and expert testimony, in the form of opinion, in a hard-fought and skillfully conducted adversary proceeding. Unfortunately, notwithstanding the *Costello* directive (59 N.J. at 346, 282 A.2d 748), Judge Morris failed to make findings of fact and conclusions of law. He did, however, decide that the state had failed to carry its burden and that the indeterminate sentencing scheme herein complained of was an unconstitutional abridgment of the equal protection clause of the Fourteenth Amendment. His decision is now, on appeal by the state, in the Appellate Division where it has been consolidated with petitioner's case.

If this Court were disposed to entertain this petition, even absent exhaustion, it would be necessary either to conduct another hearing, in this Court, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), or address a request to Judge Morris for findings of fact and conclusions of law on his hearing. *Cf.* United States ex rel. Delle Rose v. LaVallee, 468 F.2d 1288 (2d Cir. 1972); but see United States ex rel. Singer v. Meyers, 384 F.2d 279 (3d Cir. 1967), where the Court of Appeals re-

---

4. The details of this unusual situation are set forth in the transcript of the hearing before Judge Giuliano on September 8, 1972.

5. In view of the disposition made, it was deemed wise to avoid intruding into the meritorious question except as necessary. On the general question, authorities cited and uncovered in our own research include: Schilb v. Kuebel, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502, rehearing denied, 405 U.S. 948, 92 S.Ct. 930, 30 L.Ed.2d 818 (1971); Rinaldi v. Yeager, 384 U.S. 305, 308–309, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); Ex parte Gosselin, 141 Me. 412, 44 A.2d 882 (1945), appeal dismissed 382 U.S. 817 (1946); Ex parte Brady, 116 Ohio 512, 157 N.

E. 69 (1927); Platt v. Commonwealth, 256 Mass. 539, 152 N.E. 914 (1926); State v. Heitman, 105 Kan. 139, 181 P. 630 (1919); Barnard, The Conflict Between State Protective Legislation and Federal Laws Prohibiting Sex Discrimination: Is It Resolved? 17 Wayne L.Rev. 25 (1971); Gilbertson, Women and the Equal Protection Clause, 20 Clev.St.L.Rev. 351 (1971); Kanowitz, Constitutional Aspects of Sex-based Discrimination in American Law, 48 Neb.L.Rev. 131 (1968); Seidenberg, The Submissive Majority: Modern Trends in the Law Concerning Women's Rights, 55 Cornell L. Rev. 262 (1970); Comments 84 Harv. L.Rev. 1499 (1971), 56 Iowa L.Rev. 209 (1970), 4 U.San Fran.L.Rev. 323 (1970).

mitted a petitioner to the state courts, only to have the Supreme Court reverse, in 392 U.S. 647, 88 S.Ct. 2307, 20 L.Ed. 2d 1358 (1968). Either alternative offers no real assurance that a speedy and easy determination would be forthcoming in this troublesome case. On balance, therefore, we decline to treat this matter as one involving those "exceptional circumstances" which would justify overriding the exhaustion requirement.

Petitioner has, as a request for alternative relief, asked that we grant bail in an amount which would enable her to be released from confinement pending final state court determination of her matter.

■ It is of course clear that a district court, pending a determination of an application for a writ of habeas corpus, has power to fix bail, as an incident of its power to compel production of the petitioner at a hearing. Johnston v. Marsh, 227 F.2d 528, 530 (3d Cir. 1955); *cf.* United States ex rel. Slough v. Yeager, 449 F.2d 755 (3d Cir. 1971); *and see* United States ex rel. Collins v. Claudy, 204 F.2d 624 (3d Cir. 1953); Application of Stecker, 271 F.Supp. 406 (D.N.J.1966), aff'd 381 F.2d 379 (3d Cir.), cert. denied, 389 U.S. 929, 88 S.Ct. 290, 19 L.Ed.2d 280 (1967). *See also* Baker v. Sard, 137, 139, 420 F.2d 1342 (D.C.Cir. 1969); Tinkoff v. Zerbst, 80 F.2d 464 (10th Cir. 1936); Principe v. Ault, 62 F.Supp. 279 (N.D.Ohio 1945). It is noted, however, that the Bail Reform Act of 1966, 18 U.S.C. §§ 3146–3152, applies neither to state prisoners nor to habeas corpus, a civil proceeding. *See* Ballou v. Commonwealth of Massachusetts, 382 F.2d 292 (1st Cir. 1967).

That the power exists, however, is not to say that it should be readily exercised. Unlike a bail application pending direct appeal, bail incident to a filing of a petition for habeas corpus is sought by one who no longer enjoys the presumption of innocence. Thus, the power under these circumstances should be sparingly exercised. This is particularly true where a petitioner is already under confinement. United States ex rel. Epton v. Nenna, 281 F.Supp. 388, 389 (S. D.N.Y.1968). Nothing on the record presently before this Court justifies the granting of bail in this case, United States ex rel. Slough v. Yeager, 449 F.2d 755 (3d Cir. 1971), even were this Court to retain jurisdiction.

■ *A fortiori,* where the petition is being rejected for failure to exhaust state court remedies, it would scarcely be fitting for this Court to retain jurisdiction simply to grant bail. To be sure, the Court of Appeals, en banc, in United States ex rel. Johnson v. Cavell, 468 F. 2d 304 (3d Cir. 1972), recently adopted the procedure of directing the district court to retain jurisdiction, while postponing a federal court hearing, until the state court had had an opportunity to afford a hearing to the petitioner in that case. The Court of Appeals distinguished Slayton v. Smith, 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971), by finding "exceptional circumstances" under § 2254. Careful reading of *Johnson* leads this Court to distinguish it from the case at bar.

Accordingly, for the reasons set forth, it is on this 17th day of November, 1972,

Ordered that the petition of Viola J. Canfora for a writ of habeas corpus be, and the same hereby is, denied.

The Court is of the opinion that no probable cause for appeal exists in this case.