**UNITED STATES of America ex rel. Henry FORD, Petitioner,**

v.

**STATE OF NEW JERSEY et al., Respondents.**

**Civ. No. 75-198.**

United States District Court, D. New Jersey. Sept. 18, 1975.

Henry Ford, pro se.

William F. Hyland, Atty. Gen. of N. J., by Robert A. Rubenfeld, Deputy Atty. Gen., for respondents.

## OPINION

STERN, District Judge:

Petitioner was charged in Hudson County Indictment No. 374–72 with the first degree murder of Joshua Fields, in Jersey City, New Jersey, in violation of N.J.S.A. 2A:113–1 and 2A:113–2. On March 26, 27, 28 and 29, and April 2, 1973, petitioner was tried before the Honorable Thomas S. O'Brien, J.S.C., and a jury. Petitioner was found guilty of the second degree murder of the deceased, who had sustained a broken jaw, broken nose, broken leg and various puncture wounds. On May 4, 1973, Judge O'Brien sentenced petitioner to a term of 25 to 30 years in the State Prison at Trenton.

Petitioner filed a Notice of Appeal to the Superior Court of New Jersey, Appellate Division, on June 14, 1973. In a *per curiam* opinion on October 4, 1974, the Appellate Division affirmed the conviction. No petition for certification to the New Jersey Supreme Court was filed in this matter.

The petition for a writ of habeas corpus now before the Court was filed on February 4, 1975.

Petitioner contends he was denied a fair trial, the effective assistance of counsel, due process of law and the equal protection of the laws, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, because of the following errors at trial: (1) failure of the trial court to grant a continuance; (2) admission into evidence of a knife and certain hearsay evidence, notwithstanding its subsequent exclusion by the court; (3) the prosecutor's comments during summation; and (4) the placing of the petitioner at the rear of counsel beside a guard throughout the trial.

Petitioner also grounds the petition on the alleged ineffective assistance of counsel. Petitioner bases that contention on four grounds: (1) failure of trial counsel to utilize the minutes of the preliminary hearing in cross-examining prosecution witnesses; (2) failure of counsel to introduce into evidence rent receipts which were in his possession at the time of the trial; (3) counsel's direction to defendant to sit behind counsel beside a guard; (4) failure of counsel on appeal to petition the Appellate Division for a rehearing to correct an error it allegedly made in Section IV(b) of the opinion of October 4, 1974.

Before moving to the merits of petitioner's claims, the Court must determine whether he has exhausted all state remedies available to him. *Fay v. Noia,*

372 U.S. 391, 415–420, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), 28 U.S.C. § 2254(b).

■ Except for Points 1, 2 and 4, under ineffective assistance of counsel, petitioner has raised all claims asserted here in the state courts. The general issue of ineffective assistance of counsel, under which these new points arise, was presented to the state courts. Since the general issue was before the state courts, no interest would be served by barring petitioner from raising additional support for it now.[1]

■ Petitioner appealed his conviction to the New Jersey Superior Court, Appellate Division, but did not seek appeal to the New Jersey Supreme Court. His time to petition for certification, however, has lapsed. R. 2:12–3. Accordingly, the Court finds petitioner has exhausted all available state remedies and will proceed to the merits. *Fay v. Noia, supra,* 372 U.S. at 391, 399, 83 S. Ct. 822; *Canfora v. Davenport,* 350 F. Supp. 1020, 1024 (D.N.J.1972).

The first issue is the trial court's refusal to grant a continuance. Damaging testimony by Detective Adams, one of the police officers who investigated a complaint filed by Joshua Fields concerning possible narcotics activity in his apartment, was elicited for the first time at a *voir dire* on the first day of trial. Detective Adams testified on cross-examination, out of the presence of the jury, that petitioner had threatened Joshua Fields in Adams' presence hours before Fields' death. Detective Adams also stated that one Theodore Fleming had also been present at the time the threat had been uttered by petitioner. Neither the statement of petitioner nor the name of the eyewitness had been in the officer's report or available through discovery. Defense counsel moved for a mistrial or adjournment on the basis of

1. Even if petitioner is considered not to have exhausted his state remedies with regard to the claim of ineffective assistance of counsel, the Third Circuit has held that the habeas corpus statute "permits *denial* of a petition for the Great Writ on its merits, though state remedies may not be exhausted." *United States ex rel. Kelly v. Maroney,* 414 F.2d 1228, 1231 (3d Cir. 1969) (emphasis in original).

surprise, and on the basis of his need for time to locate the eyewitness and otherwise to meet Adams' testimony. (Tr. 23, 48–52)

The court denied both motions. Noting that the prosecution would take three days to present its evidence, the court held that defense counsel would have adequate time to deal with Detective Adams' testimony. In addition, the State agreed to hold Adams' testimony until the conclusion of the case, thus permitting the defense an opportunity to investigate before being required to confront Adams before the jury. The State also agreed to make all possible efforts to locate Fleming so that he might be made available to the defense.

■ Federal courts reviewing state proceedings have held that the *granting* of a continuance is within the sound discretion of the trial court. The exercise of that discretion will not be upset unless there is a showing of abuse. *United States ex rel. Drew v. Myers*, 327 F.2d 174, 181–182 (3d Cir. 1964); *United States ex rel. Branzell v. Rundle*, 294 F. Supp. 1338, 1339 (E.D.Pa.1968), *aff'd* 410 F.2d 371 (3d Cir. 1969).[2]

■ Here, defense counsel had three days in which to prepare to meet Adams' testimony. A further continuance for that purpose does not appear to have been necessary, and its denial was neither an abuse of discretion nor a denial of due process.

■ Petitioner's second claim is that he was unduly prejudiced by the admission into evidence of a "butcher knife." The knife was introduced during the testimony of Detective Rochford, who testified that the knife was found in a kitchen cupboard during a search of the deceased's apartment. (Tr. 190–191)

Following the testimony of the State Medical Examiner, however, a motion to strike the knife from evidence was granted upon a finding of the trial court that no evidence had been produced to link the knife to the wounds suffered by the deceased. (Tr. 480–481, 496–497) No fundamental unfairness to petitioner has been demonstrated in this regard.

The challenged hearsay evidence was testimony of Mrs. J. Mincey, the deceased's half-sister. She testified, over objection, that Fields had told her of previous arguments with petitioner. She further testified that the deceased said that petitioner had threatened him with a knife. (Tr. 257–258) This testimony was stricken on the last day of the trial. (Tr. 354, 362) On several occasions, the court instructed the jury not to consider the knife or the hearsay evidence. (Tr. 516, 597, 612)

■■ Whatever prejudice petitioner suffered from the initial error in admitting the evidence must be measured against the later curative instructions. Although the value of such instructions had been questioned,[3] the better view is that "[n]ot every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial but not a perfect one.' *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593; *see Hopt v. Utah*, 120 U.S. 430, 438, 7 S.Ct. 614, 30 L.Ed. 708; *cf.* Federal Rule of Criminal Procedure 52(a)." *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968).

---

2. The rule is the same in New Jersey. *See State v. Tulenko*, 133 N.J.L. 385, 44 A.2d 350, 353–354 (1935); *State v. Lamb*, 125 N.J.Super. 209, 310 A.2d 102, 104 (App.Div. 1973).

3. *See United States v. Grunewald*, 233 F.2d 556, 573 (2d Cir. 1956), *rev'd* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); *State v. Samurine*, 47 N.J.Super. 172, 135 A.2d 574 (App.Div.1957) (reference to defendant's criminal record held not successfully eradicated by instructions).

The United States Court of Appeals for the Third Circuit, like the New Jersey courts, has often found sufficient remedial value in the instructions of trial courts to disregard references to inadmissible evidence. *United States ex rel. Stoner v. Myers*, 329 F.2d 280, 283–284 (3d Cir. 1964) (error in admitting defendant's criminal record was completely remedied by cautionary instruction); *United States ex rel. Paterson v. Rundle*, 305 F.Supp. 1242 (E.D.Pa.1969) (cautionary instruction as to inadmissibility of guilty pleas of defendant's co-conspirators held sufficient); *State v. LaPorte*, 62 N.J. 312, 317–319, 301 A.2d 146, 149–150 (1973).

In this case, this Court is satisfied that any possible prejudice to petitioner was completely remedied by the trial court's thorough and repeated instructions to the jury to disregard the improperly admitted evidence.

Petitioner's third argument is that the prosecutor's comments during summation were so prejudicial that he was denied a fair trial, notwithstanding the fact that the remarks were stricken by the court, which twice instructed the jury to disregard the comments. (Tr. 578, 595–597)

Under our system of law, the prosecutor in a criminal case is no ordinary litigant. As a representative of the State, "he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

■ The New Jersey Supreme Court has held that, although the prosecutor may sum up graphically, he is limited to the evidence and to reasonable inferences therefrom. *State v. Mayberry*, 52 N.J. 413, 245 A.2d 481, 493 (1968), *cert. denied*, 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1968); *State v. Johnson*, 31 N.J. 489, 158 A.2d 11, 22–23 (1953), *cert. denied* 368 U.S. 933, 82 S.Ct. 370, 7 L.Ed.2d 195 (1961). *Accord, United States v. Somers*, 496 F.2d 723 (3d Cir. 1974), *cert. denied* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974).

■ While a high standard of prosecutorial conduct is to be expected of state and federal prosecutors, this Court's review of state prosecutorial conduct is restricted. As the United States Supreme Court has stated, endorsing the language of the First Circuit, review here " 'is the narrow one of due process, and not the broad exercise of supervisory power that [we] would possess in regard to [our] own trial court.' [473 F.2d, at 1240]" *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1973); *United States ex rel. Haynes v. McKendrick*, 350 F.Supp. 990, 997 (S.D.N.Y.1972), *aff'd* 481 F.2d 152 (2d Cir. 1973).

■ In the present case, testimony by the Medical Examiner established that the deceased suffered "an extensive beating." (Tr. 413) The "marks of violence" on his body included five cuts on his scalp, five cuts on his face and neck, 27 burns, cuts on both legs and his nose, a broken jaw and a broken right leg. (Tr. 406–409) Even in this context, however, the prosecutor's comments that Fields was "carved up like a piece of meat" and "tortured to death" were improper and inflammatory.

The trial judge sustained objections to those remarks, struck the word "tortured" and instructed the jury to disregard such adjectives. In addition, in his charge to the jury the trial judge twice emphasized that the jury was to disregard stricken portions of the summation, and to decide the case solely on the merits. (Tr. 595–597)

Given the swift and repeated action of the trial judge, this Court cannot say that the prosecutor's remarks, though improper, rise to the level of a due process violation. *Donnelly v. DeChristoforo, supra,* 416 U.S. at 642, 94 S. Ct. 1868; *United States ex rel. Paxos v. Rundle,* 491 F.2d 447, 453 (3d Cir. 1974). *Compare United States ex rel. Perry v. Mulligan,* 399 F.Supp. 1285 (D. N.J.1975).

Petitioner's fourth contention is that the trial court erred in allowing defendant to be seated behind counsel beside a guard throughout the trial. Although no mention of the matter is made in the transcript, the petition, at 3, and the State's brief, at 13, both indicate that defense counsel requested the seating arrangement. It is unclear, however, whether the guard was assigned to petitioner or happened to be stationed at that position. In either situation, the question arises whether the trial judge acted properly.

It has been recognized that, as a corollary to the presumption of. innocence, a criminal defendant is "generally entitled to the physical indicia of innocence." *Kennedy v. Cardwell,* 487 F.2d 101, 104 (6th Cir. 1973). *Cf. Gaito v. Brierly,* 485 F.2d 86 (3d Cir. 1973) (prison garb held to be prejudicial to defendant). Balanced against this desire to preserve a defendant's appearance of innocence is the court's interest in safeguarding counsel, jury and other participants in the trial proceeding. Accordingly, there is entrusted to the trial judge a broad discretion in imposing restraints on disruptive or potentially disruptive defendants. *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Magee v. Nelson,* 455 F.2d 275, 276 (9th Cir. 1972).

The least prejudicial means of ensuring an orderly trial is the use of guards. Absent serious abuse, the presence of guards is not a basis for relief. *McCloskey v. Boslow,* 349 F.2d 119, 121 (4th Cir. 1965) (the presence of six armed guards during a "defective delinquency proceeding" held to be reversible error); *Odell v. Hudspeth,* 189 F.2d 300 (10th Cir. 1951).

When more blatant physical restraints are used, such as shackles, the state trial court should hold a hearing so that evidence supporting the decision is made part of the record. Absent such a record, an evidentiary hearing in federal court is required to determine whether use of the restraint was justified. *Kennedy v. Cardwell, supra,* at 107.

In the present case, although such extreme measures were not employed, there is no indication why the guard was used, and more importantly, whether he was in plain clothes or in uniform. Were it not for the overwhelming evidence against Ford, an evidentiary hearing would be required to supplement the record. However, even the presence of a guard in uniform could not, in the context of this case,[4] constitute anything but "harmless error." *Harrington v. California,* 395 U.S. 250,

---

4. A brief review of the evidence reveals that Ford's guilt was clearly established.

In addition to the testimony of Detective Adams who stated that Ford, a few hours prior to the murder, told Fields "I'll get you, you punk," George and Madeline Mack testified that Ford was in the deceased's apartment on the night of the murder. Mr. Mack also testified that on one of the three occasions on which he asked Ford to stop the "tumbling" noise emanating from the apartment, Ford appeared at the door with a knife in hand.

Especially damaging was the testimony of Stella Hill, a friend of Ford. She testified that Ford told her, a day after the incident, that he had been fighting with Fields and that he feared he had killed him.

Hill's son, Marvin, was also called as a witness for the State. He stated that Ford, during his conversation with him, had asked him to help get rid of a body.

The testimony of both Hills was partially substantiated by a Mrs. Jordan, who was present when the conversations between Ford and the Hills took place.

Counsel for the defense vigorously contested the credibility of the State's witnesses but introduced no witnesses of his own.

89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The issue is academic, and therefore no evidentiary hearing is necessary. *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1962).

■ Finally, petitioner claims ineffective assistance of counsel. The first basis for that assertion is the failure of trial counsel to utilize minutes from the preliminary hearing in cross-examining witnesses. Though some deviation in the testimony of two witnesses, George and Madeline Mack, did occur, defense counsel effectively brought out that confusion without the use of the minutes. (Tr. 63, 97; preliminary hearing, Tr. 4)

■ The failure of trial counsel to introduce petitioner's rent receipts in evidence is also claimed to support the ineffective assistance allegation. However, the introduction of such evidence could only have shown that petitioner had paid his bills, and not that he had not quarreled with the deceased.

■ Petitioner claims counsel's request that petitioner be seated behind the counsel table beside a guard evidences the ineffectiveness of counsel, since it is petitioner's contention that such an arrangement prejudiced him before the jury. As has been noted, the control of defendants in court is within the sound discretion of the trial judge. Presumably the interests of counsel and the court coincided in this matter. Petitioner does not claim to have been unable to confer with counsel.

■ Finally, petitioner cites the failure of counsel to request a rehearing on the denial of his appeal, on the ground that petitioner's *pro se* appellate brief and the appellate court's description of the corresponding claim in its opinion did not match.

Petitioner's *pro se* brief to the Appellate Division stated:

2. That the trial judge erred in allowing the defendant to be seated in the rear of counsel beside a guard throughout the entire trial . . . . Defendant believes this act to be prejudicial to the eyes and mind of the jury in view of the violence involved in the charge.

The appellate court, in Section IV of its opinion stated:

In his *pro se* brief defendant contends, as plain error that . . . (b) error resulted in permitting a guard to be seated by him during the trial.

■ The standard of adequacy of representation is "the exercise of customary skill and knowledge which normally prevails at the time and place." *Moore v. United States*, 432 F.2d 730, 736–737 (3d Cir. 1970). A review of the record here reveals that defense counsel demonstrated adequate preparation and knowledge of the law. He raised numerous objections, many of which were sustained, and conducted vigorous cross-examination of the witnesses. In the face of an overwhelming case, he did all that he legitimately could. As one New Jersey court has said, "[c]ounsel is not obligated to raise issues which are obviously frivolous or specious." *State v. Hughes*, 128 N.J.Super. 363, 369, 320 A.2d 182, 185 (App. Div.1974).

The claim of ineffective assistance of counsel, like the other issues raised by petitioner, is without merit. Accordingly, the petition for a writ of habeas corpus will be denied. There is no probable cause for appeal.